May proceed. Good morning, and may it please the Court. My name is Scott Grenzick, and I represent Plaintiff Vicente Palacios Crawford, here with my co-counsel Ignacio Aguirre and Jordan Elias. With the Court's permission, I'd like to reserve four minutes for rebuttal. The key facts in this case are unique case are relatively straightforward and not in dispute. During and immediately after World War II, the United States government and Japan took substantial amounts of property on Guam. In doing so, they displaced a large number of original ancestral landowners. Over time, those properties were used for various military bases, and in the mid-1990s, the United States government decided it no longer needed those properties for military operations and that it would therefore transfer the properties back to the control of the government of Guam. In response, and in recognition of the historic injustices done to the island generally and specifically the ancestral landowners who had their properties taken, in 1999, Guam passed Public Law 25-45. Public Law 2545, which is codified at Chapter 80 in the Guam Statutes, provides that when the government of Guam receives property back from the United States, it either returns the property to the original ancestral landowners or, where that's not possible because the government continues to use the property, it provides just compensation. Right. So, I mean, this is a grievous harm, no doubt. But not every harm has a remedy. All right. So now the legislature is trying to right this past harm to have a legislative remedy for this. Correct? So you have your act. Tell me whether or not this act vests a clearly defined property right in your client. It absolutely does. And there's two ways for why that's true to sort of approach the question of is there a protected property interest in the Due Process Clause. And this is the two approaches that are alluded to and generally set forth in the wedges versus ledges case. The first way is you can have a clearly defined entitlement under the statute. And in this case, we would say that's certainly here. The ancestral property right is a defined term under the statute. Just compensation is a defined term under the statute. Section 801.02 clearly sets forth that the purpose of the statute is to, quote, formally recognize the ancestral property right and then to provide a mechanism for providing just compensation. Okay. So that's sort of the breakdown that that I'm confused by, is that this whole idea of just compensation, the definition on an acting legislation, Sections 801.01, 801.02, 801.04b1, they all seem to contradict each other. So really, is it clearly defined? In the contradict themselves in the sense of their definition of just compensation, Your Honor, we would say the statute is actually very consistent with one minor exception, which is in Section 801.04b, which I believe you alluded to, there's a reference to just compensation in connection to land returns. In our reply brief, we provided a number of different canons of statutory construction, if you will, that allow you to compare that language versus other language in the statute. The first key part is that in the actual definitional section of the statute, which is 801.01k, it defines just compensation as land return or any other form of available compensation. Right. So it's that alternative. Are you saying that's clearly defined? Correct. That you can — that just compensation means for individuals whose properties are not being used by the government of Guam, it means a land return. Right.  Correct. In our client, because his property is still being used by the airport, he's sort of in the second bucket, which is he's entitled to just compensation or some other form of compensation, I should say, in lieu of a return of his property. Excuse me. I had a sort of factual question, and it may or may not be relevant, but do I understand correctly that your client's predecessor in interest did receive just compensation for the property? I would agree with that statement as factually accurate, except the phrase just compensation. So there were two different payments that the United States government made to a number of ancestral landowners, including Plaintiff Crawford. The first was in the 1950s, and the second was in the 1970s. Does that have any bearing on how we understand the facts or the law in this case? Not at all, Your Honor. Why? Particularly if you look at the preamble to Public Law 25-45, which is set forth in the airport's addendum that they had on their brief at pages roughly 65 through 89, it goes through the history of those prior payments, and the conclusion that the Guam legislature drew was that those prior payments and proceedings for a variety of reasons were insufficient. I believe it's on page 89 of that addendum that the GIA provided. It said that those proceedings had not produced a satisfactory outcome, and that fact is what motivated the government of Guam to pass Public Law 25-45, which created the ancestral property right and the attendant entitlement to just compensation. So our claim arises out of that statute that the government of Guam passed. And from sort of a factual perspective, leaving the record in the undisputed material facts, which are the excerpts of record from 201 to 208, undisputed material fact 6, I believe, states that there have been over 300 land returns made to ancestral landowners whose properties aren't being used by the government of Guam, and they didn't have to repay any of those prior payments. They weren't considered in whether or not those landowners were entitled to their full relief under the Guam statute. So for those reasons, we would say the prior payments play no role in this case. Well, except it eliminates a takings claim. You'd agree with that? I think that's probably right. There's certainly a reason we didn't allege a takings claim here. Right. But so that does change the complexion of the case, because if you take the takings claim off the table, then you're left with the definition of a property right that has to be granted by statute rather than a property right that was granted by the deed. And so what you're left with, as I understand your argument, is the just compensation definition, which says, and shall also mean any other form of compensation other than a specifically described available land. Is that it? Correct. That's the relevant definition. And the other — there are other parts of the statute that are certainly relevant to the question of whether or not there's a protected property interest. And those go to really the second way that this Court in Wedges v. Ledges set forth you can have a protected property right arising out of State law. And that's when there are what they call procedural components that don't allow the government any discretion as to whether or not to grant or deny a right. So in Wedges v. Ledges, for example, the issue is whether or not the plaintiff, a game manufacturer, was entitled to a license to operate his machines. And the relevant part of the statute said that the gaming commission shall make a determination as to whether or not that particular game fit the criteria under the statute. So the Ninth Circuit looked at that language there and said, well, that's not discretionary because the commission must make a determination. They can't decide we don't feel like granting this license in this circumstance. They don't have that discretion. And that exact same language, shall make a determination, appears in the statute at 801.04c, sort of subpart Step 1, when it says the Ancestral Lands Commission shall make a determination once it receives an ancestral land claim. Later in that same paragraph, the statute says that the Ancestral Lands Commission must accept a claim for determination. So those ---- Breyer. Must accept an application. Fisher. Correct. Must accept an application for determination. So those ---- that is a nondiscretionary language. Now, the discretion that the district court pointed to was that the statute, which I believe Your Honor is probably alluding to, is that there's not a clear definition of the exact dollar value of what just compensation means for people in plaintiff's position. But the fulcrum of a due process analysis, both from the Supreme Court and in this circuit, isn't whether or not the amount of compensation or the amount of the benefit is set. The question is whether or not the government has discretion to, in the first instance, deny the benefit in its entirety. Statutes that have that type of discretion don't create a protected property right. Statutes that lack that discretion, which is the case here, do create a protected property right. And I think that distinction is drawn out by the cases that the parties have cited. So if you look to, for example, the Allen case, which was cited by the airport in their brief, that was a case in which a city attorney was terminated and alleged that she had a continuing property interest in her employment. But the relevant statute said that the city can decide to terminate employees based on factors such as they just don't have the money to continue paying that attorney, or they decide that position isn't needed anymore, which was the situation in that case. The Ninth Circuit looked at that and said that's discretion to grant or deny the benefit in the first instance. In Wallace v. City and County of San Francisco, there was a similar situation. A police officer retired and sought reappointment to the police force. But the statute didn't say he was entitled to the police reappointment or that the police commissioner shall reappoint him. It said may. It said the police commissioner may reappoint him in its discretion. Those are the types of discretionary cases where a property interest is lacking. And what we would direct, we think, is a much more analogous case, is here is the Piott v. McDougall case. And that involved a prisoner who was performing work in the prison, which is generally outsourced to private contractors, but in that instance was being performed by prisoners. And he alleged that under the relevant statute, he had an entitlement to compensation for that work. The statute said that the amount of compensation owed shall be set at the discretion of the commissioner of prisons. So that, again, was a case, just like ours, where there's some ambiguity as to what the total amount or quantity of the benefit is going to be. But there was no discretion whatsoever as to whether or not he had to be paid compensation in the first instance. Sotomayor, I have a question on a slightly different tack. What is the relevance, if any, of the decision that is referred to in the Gange or I'm not sure if that's the right pronunciation, Gange or Gange case, that is referred to in opposing counsel's briefing? That has no relevance to this case whatsoever. Briefly, that case, there was an attempted property transfer to Mr. Crawford and other landowners in an effort to satisfy their claim. And to do that, they would have taken property out of the land bank trust. And since there are many beneficiaries to the land bank trust, the Court essentially ruled that, you know, you couldn't take property out of there to benefit just two of the trust beneficiaries, that that was an impermissible transfer. But it was isolated to that particular case. It doesn't have anything to do with the issues currently here on appeal. The preclusive effect of both that decision and the prior payments during the 50s and during the 70s were litigated during the motion-to-dismiss phase. The Court denied both of those preclusion res judicata arguments, and they weren't raised again. They don't have to be. Well, they don't have to be. We can affirm on any ground that was presented to the district court. That's why I was asking about it. And they were not presented to the district court again at the summary judgment proceedings. Well, okay. Actually, there is a breach-of-contract claim that is not up on appeal currently that is more closely tied to some of the 30-158 statute, which was the one at issue in the Ganji case. But that's not — wasn't reached by the district court at the summary judgment proceedings and isn't one of the issues up on appeal. For the due process and equal protection issues, we'd say it's an irrelevant point. Do you want to reserve? Yes. I was just going to say I'd like to if there are no further questions. Thank you, counsel. Thank you. Good morning. I'm David Highsmith, assistant attorney general, and I represent defendants Calvo and Adda. We really sympathize with the plaintiff. The Guam Ancestral Lands Commission and the government of Guam would like to distribute money from the trust, but we believe it is not legally enforceable, legally possible to do that. By the way, I would take nine minutes for our side and leave the six for the airport's attorney. We don't believe that the legislature has provided sufficient guidance as to what might be or to what — how to distribute the money out of that trust. Now, the Ganji case that the court asked about established that the property held by the Guam Ancestral Lands Commission is a — is in trust and must be handled as a trust, and that you can't just remove property from the trust and thereby diminish the rights of the other beneficiaries. That's the relevance of that, that we have maybe 3,000 beneficiaries in approximately the same position as Mr. Crawford. So however we distribute that money or land or anything has to take them into account. You can't just pluck land out of the trust. And the other thing about that is the Guam Ancestral Lands Commission is charged with giving this compensation, but it isn't clear — or, rather, all it can do is give out the assets it has. It only has control over so much land and so much money. It holds those things in $10 million, $50 million, whatever he would like. Right. Well, it's clearly — it's a difficult proposition. Yes. And you're not helped by the fact that the legislature hasn't come up with clearly defined rules. All right. But what I understand Mr. Crawford arguing there is a clearly defined right, and therefore he can pursue his due process claim, is because the language in the statute establishing the right to ancestral land says — has compelling language — shall or must award just compensation. Is that sufficient to create a clearly defined property right? No, I don't believe it is. It creates an expectation of a property right. We believe that he has a right created by statute, but that it is judicially unenforceable at this time. And why is that? I mean, is it because everything's in flux and they haven't come up with the process, but yet the right's been established? And Mr. Crawford's counsel argues that that's sufficient. Counsel argues that — he says that our position is you can't establish the process. And really what we're saying is you don't know how much — what share of the trust money everyone is entitled to. Do you just give the same amount of money to every beneficiary? Do you divide the money into the square footage of the land they lost? No, understood. But his argument is you don't need to know the amount, the exact amount. He's citing case law that indicates that you have this clearly defined right, even though you don't have the specific number for the compensation. That's sufficient to serve as a basis for his 1983 claim. I do not believe so, because the cases that he signs deal with simpler situations. Like in Wedges — Ledges that he talked about, the — it was people who owned arcade games were entitled to a license if the proper official determined that they were games of chance. And they had the language, shall, in that statute. So that's a much simpler matter than we have here. It is simpler, but in the sense he's talking about his entitlement to a legal theory. So the question is, does he have a statutory right? He has a right. But it is judicially enforceable, unenforceable at this time, because it is not specifically determined. I would point out that 80101K says return of the land or any other form of compensation available. Now, available, I think, means based on what the commission has, which is certain real property which can't be taken out of the trust, or this money which can be distributed to the — to the trustee — to the beneficiaries. It would be interesting to know what Mr. Crawford believes should happen next. I mean, do we start dividing up the — how do we start carving up the trust? We'd love to distribute the money, but it really isn't up to the commission members to decide how much of it anyone gets. I think the Court is correct that there is no takings claim. Mr. Crawford's mother was given compensation from the Federal government when the land was taken, and again in pursuant to a 1977 law. So how do you solve this problem? I think the legislature has to solve it, Your Honor. I think we need to go to the legislature and ask them to pass something that will clarify their aim. Do we go by the square foot? Do we go by the amount of land taken, or what have you? I think that's the way it has to be. Why doesn't the commission have the authority to do that? It has no guidance as to how to do it. There's only one statute that deals with this trust, and it just says it shall do so by regulations. Rules and regulations. It does not say how, and that's why the Court cannot really issue an order. It could say distribute the money, but... Yeah, sure it could. I mean, it could determine on its own what just compensation meant in the context of this and using either expert testimony or otherwise. I mean, that's what happens in condemnation cases when you have multiple plaintiffs and a set amount of money. I think the problem there would be that you have three different statutory references to just compensation that say three different things. As for expert testimony, the sad thing is, no matter what we do here, the dispossessed landowners will never get the value of their land back. And in fact, it's hard to say what that is in this case, because the land is subject to restrictions by the federal government and can't be transferred. So I don't know what good expert testimony-taking facts would be. No, I'm just talking about what we're talking about, distilled to its essence, it's a just compensation all the time, even though they may have some conflicting guidance on what that means. Yes, well, having done a few condemnation cases, I know how messy that can be. They're messy, but they get it done. You're down to almost six minutes. Do you have any concluding remarks? I don't believe I have anything more to add. Thank you. Good morning, Your Honors. My name is Genevieve Rapadas, and I represent the Antonio B. Wompat International Airport Authority, as well as Ricardo C. Duenas, who is its chairman. I want to start by recognizing, which the airport has always recognized, that this case involves tragic facts and the history of Guam and the relationship with the United States, which I, as a daughter of Guam, have lived and have learned growing up. The problem here, which we have said from the very beginning on behalf of the airport, is that the airport should not have ever been in this case in the first place. I want to focus specifically on that argument because I think that argument is unique to my clients. We agree with the GLC, Mr. Highsmith, that Mr. Crawford has serious issues with his argument that there is an ancestral property right that is protected by the statute. We have offered arguments in our answering brief as to why the district court's decision and order should be affirmed on that basis alone. To just quickly answer the question, yes, there is an ancestral property right that has been recognized by 80102, which is the statute, part of the statute that creates the GLC and the process of compensating the ancestral landowners. However, because Mr. Crawford has to tie his ancestral property right or his protectable property interest in that statute, he has to live by that statute. The court has to look specifically at that statute as to what the roles and responsibilities are of the parties involved specifically with GLC. And in terms of compensation, Mr. Highsmith is correct. Yes, there is this property right that is recognized with the word shall. However, the funding mechanism is questionable. The source of the compensation is questionable. What compensation Mr. Crawford is entitled to as an ancestral landowner whose lands are being held still for public use is questionable. And the GLC, and alone, the GLC has the discretion with, I guess, the input of the landowners to determine what that compensation is. So we will submit on the briefs with respect to that question. I want to turn now, given my limited time, to the alternative argument that we raised in our brief, our answering brief, and which we have said from the very beginning is that the airport does not belong in this case at all. It never did. However you call it, whether it's a misjoined defendant, whether it's an improper defendant, Mr. Crawford is rooting his claims, his due process claims, and just to be clear, there was a stipulation for dismissal with respect to the equal protection claim, so the airport is not subject to that claim, solely the due process claim. With respect to that claim, he has now said that his ancestral property right is found or recognized in 80102, again, part of this larger statute that creates the GLC. Therein lies the problem with respect to the airport. If Mr. Crawford wants, believes that his rights are found in the statute, then he has to live by the statute, and the statute only empowers the GALC with respect to considering claims, processing claims, taking in claims, and determining compensation. The airport has no role, has no obligations, has no power, and never has. In fact, if you look at the record that's up on appeal, this is a long battle that Mr. Crawford has undertaken, and we recognize that. He has worked tirelessly for the other ancestral landowners whose lands are being held by Tizen, and attempted to work with both the airport and the legislature to obtain compensation for him and the other class members. However, that history will demonstrate that every time the legislature attempted to obligate the airport to do something or obligated the airport to either determine lands that it was no longer using or to be part of this commission, which was Public Law 26-100, they recognized at the end after urging from the airport as well as the FAA, because the FAA had to get involved, that there was absolutely no way that the airport, its revenues or its lands could be obligated to Mr. Crawford. And so on that basis, if you look at the entire history, not one single law that Mr. Crawford can cite to says anything about the airport. If you look at the decision in order from the district court, back to front, not one mention of the airport. It is all, GLC shall do this, GLC shall do that, they are empowered to do this, they are empowered to do that. Airport is nowhere to be found. And on that basis, we believe that in the event that there is no, that the court finds that there is a protectable property interest, we would submit that the airport should be, the judgment for the airport should be affirmed on that basis. And very quickly, I want to just address the authorities that Mr. Crawford had put in his reply with respect to his argument that the Ninth Circuit, that this court cannot review this issue. None of those cases, actually most if not all of those cases did not, are inapplicable here. In this case, we fully litigated this question of whether the airport was a proper party. It was in almost every substantive brief that we submitted to the court. And I will cite to the Jewell v. Payless drugstore case, which is 741 F2D-1555, which is from this court, that says if there is an alternative theory that can be presented by the appellee, they can present it, and the court is obliged to affirm the decision below, the judgment below, if the argument has merit. And with that, I will rest. Thank you. Roberts. Thank you, counsel. Layer of rebuttal. I'd like to briefly address some of the issues that were just raised. Essentially what the government, Mr. Highsmith's position is a recognition that there is a protected property interest. I believe his words were that Mr. Crawford has a right and that he has an expectation. A reasonable expectation of entitlement is the exact language used in wedges, ledges, and numerous other cases to identify when a protected property interest exists. The rest of his argument stems from what, as we said in the brief, we think is a faulty premise, which is the only type of compensation available to Mr. Crawford is payments from the land bank trust. It's simply not accurate, and as the government admitted in its own briefings at the motion to dismiss, that argument is actually inconsistent with the express definition in 801k of just compensation as any other form of available compensation. With respect to the issue, setting that aside, of whether land payments from the land bank trust are impossible, we simply reject that idea. The JLC is an agency. It is certainly equipped to come up with rules and regulations. In fact, the rules and regulations would be subject to the Guam administrative adjudication law, which requires that before any rulemaking becomes final, it goes to the legislature for the legislature's approval. So in that sense, there's been no delegation of rulemaking authority, final rulemaking authority at all to the JLC. And even if there had been, I think as Your Honor alluded to, the JLC is well equipped to do this. Agencies make these kind of determinations and decisions all the time. Our reply brief, we cited a number of Supreme Court cases that make clear that the statute doesn't have to be nearly as specific as Mr. Highsmith would suggest. And as we pointed out in our brief, in fact, the JLC has drafted rules and regulations. Plaintiff Crawford has provided comments to those rules and regulations when they were open for the public comment period. So we don't see any reason why, even if the relevant payments were from the land bank trust, why there's any restriction or problem with carrying out those payments. But as Your Honor has noted, that's not really the relevant question here. It's whether Mr. Crawford has a protected property interest, is entitled to a hearing to determine what compensation he's owed, and that at that point later in the case, that's where these types of determinations like the form of compensation occur. Thank you. Roberts. Thank you, counsel. The case just argued will be submitted for decision. And it will be on recess for the morning.
judges: Thomas, Graber, Kobayashi